## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ADNAN VIRANI, an individual;
JUNAID HAMMED, an individual;
WORLD OF SPACE LLC, a Florida limited
liability company; WORLD OF LOTUS LLC,
a Florida limited liability company,

      Plaintiffs,                       CASE NO.:0:23-cv-62110

v.

PRIYANK BAFNA, an individual;
BP WATCHES AND ELECTRONICS CO
LTD, a Chinese corporation; KAIF HAMID
A/K/A KEVIN HAMID, an individual;
ALTAF CHANDANI, an individual;
LNSK ASSOCIATES, INC., D/B/A AVTX
WHOLESALE, a Texas corporation;
KETAN PATEL, an individual;
MK DISTRIBUTORS, INC., a Massachusetts
corporation,

      Defendants,

_____/

## COMPLAINT

COME NOW Plaintiffs, ADNAN VIRANI; JUNAID HAMMED; WORLD OF SPACE

LLC, a Florida limited liability company; WORLD OF LOTUS LLC, a Florida limited liability

company, by and through the undersigned counsel, and sue Defendants: PRIYANK BAFNA; BP

WATCHES AND ELECTRONICS CO LTD, a Chinese corporation; KAIF HAMID A/K/A

KEVIN HAMID; ALTAF CHANDANI; LNSK ASSOCIATES, INC., D/B/A AVTX

WHOLESALE, a Texas corporation; KETAN PATEL, an individual; MK DISTRIBUTORS,

INC., a Massachusetts corporation (hereinafter collectively "Defendants"); and allege as follows:

## JURISDICTION AND VENUE

1.      Plaintiffs, ADNAN VIRANI; JUNAID HAMMED; WORLD OF SPACE LLC, a Florida limited liability company; WORLD OF LOTUS LLC, a Florida limited liability company (hereinafter collectively "Plaintiffs"), bring this civil action pursuant to 18 U.S.C. § 1964, et seq, titled "Federal Racketeer Influenced and Corrupt Organizations Act."

2.      This Court has jurisdiction over the subject matter of the causes of action in this Complaint by virtue of:

      a.   Federal question jurisdiction pursuant to 28 U.S.C. § 1331, involving an action pursuant to 18 U.S.C. §§ 1964(a) and (c), the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO");

      b.   Subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, specifically, diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), involving an action between citizens of a State and citizens or subjects of a foreign State;

      c.   Supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), to assert state law claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in the Southern District of Florida because a substantial part of the events or omissions giving rise to this action occurred in this district.

4.      This Court has jurisdiction over the persons of the Defendants because:

      a.   Each Defendant transacts business in the State of Florida and within this district;

      b.   Each Defendant is amenable to service of process within the meaning of Federal Rule of Civil Procedure 4(e), 4(f) and 18 U.S.C. § 1965(b);

c. Plaintiffs' injuries from Defendants' conduct are "domestic injury" because the bank accounts used by Plaintiffs were and are located inside the United States, and thus the geographic location of Plaintiffs' economic injury was within the United States, and this District;

d. Plaintiffs have alleged mail and wire fraud violations which involve sufficient "domestic conduct" because the Defendants used domestic mails and wires (email and interstate phone call communications with Plaintiffs by Defendants) in furtherance of the scheme to defraud, and the use of the mail and wires was a core component of the scheme to defraud;

e. Further, personal jurisdiction comports with due process. See *Phelan v. Lawhon*, 229 So. 3d 853, 859 (Fla. 3d DCA 2017).

5. Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants either reside or transact business in this district or, alternatively, this district is where a substantial part of the events or omissions giving rise to the claim occurred. For example, the natural person Plaintiffs transact business or reside within this District, and the company Plaintiffs have their principal places of business in this District and conducted all business related to these claims.

## **PARTIES**

6. Plaintiff, ADNAN VIRANI (hereinafter "Adnan"), is an individual and Florida resident residing in Fort Myers, Florida, and is otherwise *sui juris*.

7. Plaintiff, JUNAID HAMMED (hereinafter "Junaid"), is an individual and Georgia resident residing in Lawrenceville, Georgia, and is otherwise *sui juris*.

8.      Plaintiff, WORLD OF SPACE LLC (hereinafter "World of Space"), is a Florida limited liability company with its principal place of business in Fort Myers, Florida. Plaintiffs Adnan and Junaid are its owners.

9.      Plaintiff, WORLD OF LOTUS LLC (hereinafter "World of Lotus"), is a Florida limited liability company with its principal place of business in Estero, Florida. Plaintiff Adnan is its owner.

10.      Defendant, PRIYANK BAFNA (hereinafter "Priyank") is a resident of China and is otherwise *sui juris*. Defendant Priyank is subject to personal jurisdiction in the Southern District of Florida and in this Court pursuant to Fla. Stat. § 48.193 in that he conducts substantial and not isolated business within this jurisdiction and otherwise has sufficient contacts upon which to support personal jurisdiction, and because subjecting him to personal jurisdiction in the Southern District of Florida does not otherwise offend traditional notions of fair play and substantial justice. Specifically, Defendant Priyank engaged in and/or carried on business and business ventures in the State of Florida, and this action arises out of those activities. Additionally, Defendant has caused Plaintiffs to suffer injury in this State as a consequence of the tortious acts alleged herein. This Defendant is also subject to personal jurisdiction pursuant to § 48.193 Florida Statutes because this Defendant committed a tort within the State of Florida through the use of written communications and telephonic communications directed to the state of Florida. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) ("telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b) if the alleged cause of action arises from the communications."). Finally, personal jurisdiction is proper pursuant to 18 USC § 1965 because Defendant Priyank is a civil RICO defendant.

11.     Defendant, BP WATCHES AND ELECTRONICS CO LTD (hereinafter "BP Watches"), is a Chinese corporation, with its principal place of business in Foshan, Guangdong, China. Defendant Priyank is the owner. This Defendant has caused Plaintiffs to suffer injury in this State as a consequence of the tortious acts alleged herein and committed in the State of Florida.

12.     Defendant, KAIF HAMID A/K/A KEVIN HAMID (hereinafter "Kaif") is a Texas resident and is otherwise *sui juris*. Defendant Kaif is subject to personal jurisdiction in the Southern District of Florida and in this Court pursuant to Fla. Stat. § 48.193 in that he conducts substantial and not isolated business within this jurisdiction and otherwise has sufficient contacts upon which to support personal jurisdiction, and because subjecting him to personal jurisdiction in the Southern District of Florida does not otherwise offend traditional notions of fair play and substantial justice. Specifically, Defendant Kaif engaged in and/or carried on business and business ventures in the State of Florida, and this action arises out of those activities. Additionally, Defendant has caused Plaintiffs to suffer injury in this State as a consequence of the tortious acts alleged herein. This Defendant is also subject to personal jurisdiction pursuant to § 48.193 Florida Statutes because this Defendant committed a tort within the State of Florida through the use of written communications and telephonic communications directed to the state of Florida. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) ("telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b) if the alleged cause of action arises from the communications."). Finally, personal jurisdiction is proper pursuant to 18 USC § 1965 because Defendant Kaif is a civil RICO defendant.

13.     Defendant, ALTAF CHANDANI (hereinafter "Altaf") is a Texas resident residing in Plano, Texas, and is otherwise *sui juris*. Defendant Altaf is subject to personal jurisdiction in

the Southern District of Florida and in this Court pursuant to Fla. Stat. § 48.193 in that he conducts substantial and not isolated business within this jurisdiction and otherwise has sufficient contacts upon which to support personal jurisdiction, and because subjecting him to personal jurisdiction in the Southern District of Florida does not otherwise offend traditional notions of fair play and substantial justice. Specifically, Defendant Altaf engaged in and/or carried on business and business ventures in the State of Florida, and this action arises out of those activities. Additionally, Defendant has caused Plaintiffs to suffer injury in this State as a consequence of the tortious acts alleged herein. This Defendant is also subject to personal jurisdiction pursuant to § 48.193 Florida Statutes because this Defendant committed a tort within the State of Florida through the use of written communications and telephonic communications directed to the state of Florida. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) ("telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b) if the alleged cause of action arises from the communications."). Finally, personal jurisdiction is proper pursuant to 18 USC § 1965 because Defendant Altaf is a civil RICO defendant.

14.     Defendant, LNSK ASSOCIATES, INC. D/B/A AVTX WHOLESALE (hereinafter "AVTX"), is a Texas corporation, with its principal place of business in Dallas, Texas. Defendants Kaif and Altaf are the owners. This Defendant has caused Plaintiffs to suffer injury in this State as a consequence of the tortious acts alleged herein and committed in the State of Florida.

15.     Defendant, KETAN PATEL (hereinafter "Ketan"), is a Massachusetts resident residing in Boston, Massachusetts, and is otherwise *sui juris*. Defendant Ketan is subject to personal jurisdiction in the Southern District of Florida and in this Court pursuant to Fla. Stat. § 48.193 in that he conducts substantial and not isolated business within this jurisdiction and

otherwise has sufficient contacts upon which to support personal jurisdiction, and because subjecting him to personal jurisdiction in the Southern District of Florida does not otherwise offend traditional notions of fair play and substantial justice. Specifically, Defendant Ketan engaged in and/or carried on business and business ventures in the State of Florida, and this action arises out of those activities. Additionally, Defendant has caused Plaintiffs to suffer injury in this State as a consequence of the tortious acts alleged herein. This Defendant is also subject to personal jurisdiction pursuant to § 48.193 Florida Statutes because this Defendant committed a tort within the State of Florida through the use of written communications and telephonic communications directed to the state of Florida. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) ("telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b) if the alleged cause of action arises from the communications."). Finally, personal jurisdiction is proper pursuant to 18 USC § 1965 because Defendant Ketan is a civil RICO defendant.

16.     Defendant, MK DISTRIBUTORS, INC. (hereinafter "MKD") is a Massachusetts corporation, with its principal place of business in Woburn, Massachusetts. This Defendant has caused Plaintiffs to suffer injury in this State as a consequence of the tortious acts alleged herein and committed in the State of Florida.

## INTRODUCTION

17.     The heart of this case lies in the actions of Defendants Pryank and Altaf, who exploited their close connection with the Plaintiffs. Originally, the Plaintiffs engaged Pryank's services for manufacturing their product, the "SpaceMax Sub Ohm 4000 Puffs" vaping device ("SpaceMax Subs"), granting Altaf the opportunity to purchase their product in bulk, with the intention of becoming the primary distributor of SpaceMax products in the United States.

Unbeknownst to the Plaintiffs, Pryank and Altaf shared a deep friendship and hatched their own scheme. Pryank, in contravention of their agreement, began manufacturing the SpaceMax products and offered it to Altaf at an exceptionally discounted rate. Altaf, in turn, sold SpaceMax Subs to other distributors and retailers at significantly lower prices, causing severe disruption to the market. SpaceMax saw its contractual relationships with distributors disintegrate as they switched to buying directly from Altaf at a reduced cost. The Plaintiffs are now urgently seeking both injunctive relief and damages against the Defendants, pending approval of their trademark application.

## **GENERAL ALLEGATIONS**

18.     Beginning in November 2020, the company Dongguan Topson Technology Company, Limited d/b/a ELUX (hereafter "ELUX") began manufacturing and distributing the "SpaceMax Sub Ohm 4000 Puffs" vaping device in China. *See* Affidavit of ELUX legal representative Tan Zhenghui attached and incorporated as **Exhibit A**.

19.     ELUX applied for and received trademark protection for its new "SpaceMax Sub Ohm 4000 Puffs" vaping device in China. *See* Affidavit at **Exhibit A**.

20.     While ELUX primarily sold its products in the United Kingdom market, it sought to expand to the United States.

21.     In late 2020 through early 2021, ELUX began working with World of Space as the exclusive seller of devices under the new SpaceMax brand in the United States. *See* Affidavit at **Exhibit A**.

22.     In early 2021, World of Space began selling SpaceMax products in its affiliated retail stores including World of Lotus.

23.     In 2021, World of Space requested that ELUX modify the design of the SpaceMax packaging to be unique to the United States market, in order to differentiate from the SpaceMax

products sold in Europe; ELUX agreed, and World of Space uniquely designed the SpaceMax packaging.

24.     Thereafter, in approximately March 2021, World of Space sold SpaceMax products to AVTX of an approximate value of $20,000-$25,000.

25.     At this time, AVTX sold only a small quantity of approximately 50-70 cases of SpaceMax products per month, all of which it purchased from SpaceMax as the owner of the product in the United States.

26.     AVTX never had any direct dealings with ELUX.

27.     Pursuant to the exclusive contractual relationship between ELUX and SpaceMax, SpaceMax was the exclusive owner and authorized seller of the vaping products in the United States.

**Manufacturing the SpaceMax Products in the United States**

28.     During or around November 2020, World of Space entered into an agreement with Priyank on behalf of his company, BP Watches, wherein BP Watches would manufacture the SpaceMax products at the direction of and exclusively for World of Space.

29.     Under this agreement, World of Space paid BP Watches $5.75 per device it manufactured, which was calculated as $5.50 for the device itself and $0.25 commission to Priyank. In other words, for its services, BP Watches stood to make $0.25 for each product manufactured.

**Distribution of the SpaceMax Products in the United States**

30.     World of Space sold the SpaceMax products to specific distributors whose business relationships World of Space, World of Lotus, Adnan, and Junaid personally cultivated.

31.     Eventually, Plaintiffs entered into an agreement with Defendants Pryank, Kaif, BP Watches and AVTX, wherein the parties agreed that, in addition to Pryank being the exclusive

manufacturer, AVTX would be the primary distributor, allowing AVTX to buy in bulk from SpaceMax and sell in the market to other distributors and retailers.

32.     Once manufactured, World of Space sold the SpaceMax products for $6.25 per device to distributors in its network, including wholesaler AVTX and MKD.

33.     In turn, AVTX sold the SpaceMax products to distributors for $6.75-$7.00.

34.     Finally, the distributors sold the SpaceMax products to retailers for $7.50-$8.00.

35.     Retailers then sold the SpaceMax products to consumers for $19.99-$22.99.

**World of Space Applies for Trademark Protection**

36.     Thanks to the business acumen, creativity and promotion efforts of Plaintiffs, the SpaceMax brand and products earned a name and became very popular in the United States.

37.     World of Space applied for trademark protection of the SpaceMax brand and mark, with ELUX's blessing. *See* trademark application filed on February 4, 2022, attached and incorporated as **Exhibit B**.

38.     On June 30, 2023, over one full year after World of Space applied for trademark registration, AVTX filed its Notice of Opposition to World of Space's trademark application, claiming that AVTX is the owner of the SpaceMax brand. AVTX claims are fraudulent. A pure use analysis evidence that AVTX's first date of use of the SpaceMax brand and/or product is after World of Space's first use. *See* Notice of Opposition filed by AVTX attached and incorporated as **Exhibit C**.

39.     SpaceMax is confident that its trademark application will be approved.

**BP Watches Sells Counterfeit SpaceMax Products Directly to Distributors and to AVTX**

40.     During or around June or July 2021, after a few months of selling the newly popular SpaceMax products in the United States, Adnan began to receive complaints about World of

Space's pricing, with distributors stating that AVTX was selling SpaceMax products at the $6.25 cost, or an even lower price.

41.     When Adnan asked Kaif about the price discrepancy in telephone calls, Kaif denied AVTX's lower pricing.

42.     Adnan then learned the Priyank and Kaif have been close friends since childhood, and that Priyank had conspired with his good friend Kaif to cut out World of Space from the United States market.

43.     Additionally, Adnan learned from other distributors that AVTX had been receiving shipments of SpaceMax products—but World of Space had not sold any SpaceMax products to AVTX.

44.     Adnan then learned that AVTX and BP Watches had begun selling to distributors who previously bought only from World of Space.

45.     BP Watches began shipping damaged SpaceMax products to World of Space.

46.     Meanwhile, BP Watches continued to sell counterfeit SpaceMax products to AVTX at cost, while BP Watches had agreed to manufacture and produce SpaceMax products for the United States market *exclusively* for World of Space.

47.     AVTX then claimed that SpaceMax was its own brand and flooded the national market with cheaper, counterfeit SpaceMax products and caused Plaintiffs to suffer damages due to consumer confusion, lost sales, and loss of the use of the SpaceMax brand.

48.     As a result of Priyank and Kaif's actions, misrepresentations, and omissions, Plaintiffs lost substantial profits of approximately $10,000,000.00.

49.     Due to BP Watches' selling World of Space's SpaceMax products to other distributors, World of Space was forced to find and engage a new manufacturer, which now manufactures World of Space's new product, SpaceMax Pro 4500 Puffs.

50.     In August 2023, Priyank admitted that he told a person inquiring about SpaceMax that he could not sell the brand in the United States because he had "sold the brand exclusive to someone in [USA]" and directed the person to "go on their site and contact them." *See* WhatsApp and text messages attached and incorporated as **Exhibit D**.

51.     Also in August 2023, in a text conversation with Adnan, Priyank admitted that Adnan had "bought the brand from [K]aif not me. . . ur brand paper work was with kaif not me," which demonstrates that Priyank knew that the SpaceMax brand belongs to Adnan or an entity that Adnan controls, i.e., World of Space LLC. *See* WhatsApp and text messages at **Exhibit D**, pg. 6.

**Conditions Precedent**

52.     All conditions precedent for bringing the above captioned matter and the following counts have been performed, satisfied, occurred, otherwise fulfilled, or waived.

53.      Plaintiffs, ADNAN VIRANI, JUNAID HAMMED, WORLD OF SPACE LLC, and WORLD OF LOTUS LLC, have retained the undersigned counsel to represent their interests in this matter, they are obligated to pay reasonable attorneys' fees and costs incurred herein, and they are entitled to recover same from Defendants as alleged below.

**COUNT I - CIVIL VIOLATION OF FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("CIVIL RICO") PURSUANT TO 18 U.S.C. § 1961, ET. SEQ.**
*Against Priyank Bafna, Kaif Hamid A/K/A Kevin Hamid, Altaf Chandani, and Ketan Patel*

54.     Plaintiffs reallege paragraphs 1 through 53 as though fully restated herein.

55.     This is an action for civil damages pursuant to the Federal Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1961, et. seq., as against Defendants PRIYANK

BAFNA, KAIF HAMID A/K/A KEVIN HAMID, and ALTAF CHANDANI ("RICO Defendants").

56.    As set forth in the general allegations above, this Count involves THE DEFRAUDING OF PLAINTIFFS OF INCOME FROM PLAINTIFFS' EXCLUSIVE USE OF THEIR OWN TRADEMARK AND COMPENSATION FOR DEFENDANTS' UNAUTHORIZED AND UNLICENSED USE OF PLAINTIFFS' TRADEMARK FOR AT LEAST TWO YEARS: multiple fraudulent schemes perpetrated by Defendants Priyank, Kaif, and Altaf ("RICO Defendants") to illegally deceive and defraud Plaintiffs out of Plaintiffs' exclusive right to use Plaintiffs' trademark and to illegally deceive and defraud Plaintiffs out of compensation and payment for Defendants' unlawful use of Plaintiffs' trademark, through the use of U.S. Mail and Interstate Wires.

**Applicable Statutes**

57.    This is an action for civil violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal Civil RICO") pursuant to 18 U.S.C. § 1962(c) and § 1964(c). which provides.

58.    Pursuant to 18 U.S.C. § 1962(c):

> It shall be unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs for a pattern of racketeering activity or collection of unlawful debt.

59.    Pursuant to 18 U.S.C. § 1962(d), it shall be unlawful to conspire to violate any of the RICO substantive provisions, including section 1962(c).

60.    18 U.S.C. § 1964(c), creates a private right of action for any person injured in his business or property by reason of violation of § 1962 and provides for threefold the damages sustained including reasonable attorney fees.

**The Enterprise**

61.     Under Federal law, 18 U.S.C. § 1961 defines an "enterprise" as follows:

> (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

62.     The individual RICO Defendants and others associated in fact constitute an "Enterprise" (hereinafter the "Enterprise" or "Association in Fact Enterprise"), which functioned for the purpose of defrauding Plaintiffs while enriching the Enterprise's members and associates.

63.     Each RICO Defendant conducted the affairs of the Association in Fact Enterprise or acted at the direction of Defendants Priyank, Kaif, and Altaf, in the conduct of the affairs of the Enterprise.

64.     The Enterprise is an ongoing organization which engages in, and whose activities affect interstate commerce.

65.     The Enterprise had longevity, over two years, sufficient to permit each of the RICO Defendants to pursue the Enterprise's purpose.

**Functioning Together as Continuing Unit**

66.     At all times relevant hereto, members and associates of the Enterprise functioned together as a continuous unit, with a common purpose for the economic benefit and gain of the RICO Defendants who control the Enterprise at the expense of Plaintiffs, as further described below.

67.     Each participant in the RICO Enterprise had systematic linkage to each other through corporate ties, contractual relationships, employment, financial ties, and continuing coordination of activities.

68.     Each RICO Defendant conducted the affairs of the Enterprise or acted at the direction of Defendants Priyank, Kaif, and Altaf in the conduct of the affairs of the Enterprise.

69.     The Enterprise associates utilized BP Watches, AVTX, and MKD, as the vehicles for their racketeering activities.

70.     BP Watches is a legal entity controlled by RICO Defendant Priyank.

71.     AVTX is a legal entity controlled by RICO Defendants Kaif and Altaf.

72.     MKD is a legal entity controlled by Defendant Ketan.

73.     Based upon the RICO Defendants' unlawfully obtaining, transmitting, and collecting monies through the use of interstate mailings and wirings issued in the names of BP Watches, AVTX, and MKD; transporting SpaceMax products through interstate mailings; and communicating through interstate wires to arrange for the transportation of SpaceMax products and transmission of monies, the same affected interstate commerce in furtherance of the racketeering schemes as alleged herein.

74.     Defendants Priyank, Kaif, and Altaf directed and caused to be placed in the stream of U.S. Mail the fraudulent and misleading payments in the form of mailed checks, fraudulent and misleading information regarding BP Watches and AVTX's payments and obligations to Plaintiffs, and the counterfeit SpaceMax products themselves.

75.     Defendants Priyank, Kaif, and Altaf were directly involved in continuing the fraud against Plaintiffs by intentionally omitting that Defendants (1) sold unauthorized, unlicensed, and counterfeit SpaceMax products directly to distributors, and (2) used the SpaceMax trademark without paying Plaintiffs for the use.

76.     Defendants Priyank, Kaif, and Altaf were directly involved in continuing the fraud against Plaintiffs by communicating over interstate wires amongst themselves and with distributors to cut out Plaintiffs from use of Plaintiffs' own SpaceMax brand, issuing and receiving payment

over interstate wires and U.S. Mail for counterfeit SpaceMax products, and placing into the stream of U.S. Mail the counterfeit SpaceMax products.

77. BP Watches, AVTX, and MKD were used as a vehicle through which the RICO Defendants ran their Enterprise by engaging in hundreds of acts of mail fraud and wire fraud, which is predicate activity in violation of 18 U.S.C. § 1341 and § 1343.

78. The RICO Defendants had the specific intent to participate in the overall RICO enterprise, which is evidenced by the schemes to defraud Plaintiffs.

**Common Purpose**

79. The members and associates of the Association in Fact Enterprise banded together with the common purpose: to enrich themselves at the expense of Plaintiffs.

80. The RICO Defendants share the bounty of their criminal enterprise by sharing the financial gain from their fraudulently obtained monies.

81. As an independent scheme, Enterprise members worked together to permanently withhold payment from Plaintiffs for Defendants' use of Plaintiffs' SpaceMax trademark, negotiate and communicate directly with Plaintiffs' distributors in the United States in defiance of the agreement that Plaintiffs are the exclusive U.S. source of SpaceMax products, and deprive Plaintiffs of the benefit of Plaintiffs' SpaceMax trademark—all of which increased BP Watches, AVTX, and MKD's profits by defrauding Plaintiffs for Defendants' own financial gain.

**Operation and Management/Distinctness**

82. In order to implement schemes successfully and convincingly to unlawfully steal from Plaintiffs and others, the RICO Defendants needed an organization and system that enabled them to effectively establish an aura of bona fide business operations, accounting and charges.

83. The Enterprise provides that organization and system.

84.    While the RICO Defendants participated in, and are members of, the Enterprise, they have a separate existence from the Enterprise, as each individual RICO Defendant is different than the Enterprise which they direct, control and/or act willingly at the direction of another RICO Defendant.

85.    The Enterprise is an association of the RICO Defendants and Non-RICO Defendant Associated Entities and has operated since 2021.

**The Racketeering Violation**

86.    From approximately 2021, and continuing up through the date of the filing of this Complaint, the RICO Defendants—each of whom are persons associated with or employed by the Association in Fact Enterprise—did knowingly and unlawfully conduct or participate, directly or indirectly, in the Association in Fact Enterprise through a pattern of criminal activity within the meaning of 18 U.S.C. § 1961(5) (defining "pattern") and 18 U.S.C. § 1961(1) (defining "racketeering activity"), all in violation of 18 U.S.C. § 1962 ("Prohibited Activities").

87.    RICO Defendants have engaged in a pattern of racketeering activity by committing at least two acts of racketeering activity after the effective date of the statute, and also within ten (10) years after a prior incident of racketeering conduct. Defendants' actions:

    a.    violated 18 U.S.C. § 1341 (mail fraud); and

    b.    violated 18 U.S.C. § 1343 (wire fraud).

**Defendants' Commission of Specific Predicate Activity**

88.    Mail Fraud violations under 18 U.S.C. § 1341 and Wire Fraud violations under 18 U.S.C. § 1343:

    a.    The RICO Defendants engaged in this violative conduct in the conduct of the affairs of the Enterprise, i.e., the Defendants together engaged in at least three (3) schemes to deprive Plaintiffs of money and property by fraud

through these Schemes which they accomplished, in part, through a regular way of conducting business using mail and wire fraud; and

b.  The RICO Defendants fraudulently misrepresented to and/or omitted from Plaintiffs: Defendants activities which permanently deprived Plaintiffs of payment for Defendants' use of Plaintiffs' SpaceMax trademark, negotiated and communicated directly with Plaintiffs' distributors in contravention of the agreement that Plaintiffs are the exclusive U.S. source of SpaceMax products, and deprived Plaintiffs of the benefit of their intellectual property rights in the SpaceMax trademark; and

c.  Email transmissions from 2021 through present (which are interstate wirings for purposes of § 1343) caused by the RICO Defendants, in furtherance of the scheme to defraud as described; and

d.  The RICO Defendants' statements made over interstate wires via WhatsApp message transmissions, text message transmissions, other instant message or chat electronic communication transmissions, and phone calls from 2021 through present, in furtherance of the scheme to defraud as described.

89.  Examples of specific violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud) by the RICO Defendants from 2021 through filing this Complaint:

a.  NUMEROUS ACTS OF WIRE FRAUD: Defendant Priyank's fraudulent WhatsApp and text messages to Plaintiff Adnan. *See* WhatsApp and text messages at **Exhibit D**.

b.  NUMEROUS ACTS OF WIRE FRAUD: Defendant Priyank's fraudulent email messages to Plaintiff Adnan. *See* email messages attached and incorporated as **Exhibit E**.

c.  NUMEROUS ACTS OF MAIL FRAUD: from 2021 through present, Defendant Priyank either directly placed or caused BP Watches to place counterfeit SpaceMax products in the stream of U.S. Mail, and Defendant Priyank fraudulently omitted or misrepresented the existence of these counterfeit SpaceMax products in his communications with Plaintiffs.

d.  NUMEROUS ACTS OF WIRE FRAUD: Defendants Kaif and Altaf's fraudulent email messages to Plaintiff Adnan. *See* Emails at **Exhibit E**.

e.  NUMEROUS ACTS OF MAIL FRAUD: from 2021 through present, Defendants Kaif and Altaf caused AVTX to issue payment in the form of checks to enter the stream of U.S. Mail, which Defendants Kaif and Altaf fraudulently misrepresented as full payment to Plaintiffs for SpaceMax products. *See* checks attached and incorporated as **Exhibit F**.

**Schemes, Victims, and Injuries**

90.  As stated in the general allegations above, this Count involves the following schemes which were accomplished through a regular pattern and way of conducting the affairs of the enterprise through wire fraud and mail fraud to defraud Plaintiff and others.

**Pattern of Racketeering Activity**

91.  A 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

92.     Under Supreme Court law, *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) each RICO Defendant must engage in a pattern of racketeering, as described above, which requires each Defendant to meet the "continuity" plus "relationship" tests.

**Continuity Plus Relationship**

93.     The course of conduct engaged in by the RICO Defendants satisfies both the "continuity" and "relationship" tests of racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5).

94.     Plaintiffs can show the relatedness prong because the predicate acts have the "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise."

95.     All predicate acts had the same purpose of defrauding Plaintiff and others, all for the personal enrichment of the RICO Defendants and their associates.

96.     The continuity of the pattern of racketeering activity constitutes closed-ended continuity as it occurred over a substantial period of time, i.e., from about 2021 and up to the present, and involves, as described, multiple schemes and multiple victims as alleged hereinabove.

97.     The pattern of racketeering activity is shown by the threat of continued activity as RICO Defendants Priyank, Kaif, and Altaf have directed associates throughout the years to repeatedly engage in the same illegal and illicit activities involving the operation of BP Watches, AVTX, and MKD.

98.     Thus, engaging in the pattern of racketeering as set forth herein is the way the RICO Defendants regularly conduct the operations of the Association in Fact Enterprise, and their predicate acts threaten that they will engage in future criminal conduct.

99.     Furthermore, the RICO Defendants continue to engage in these predicate acts to harm Plaintiffs, which establishes a threat of long-term racketeering activity and evidences the continuity of Defendants' open-ended pattern of racketeering activity.

100.     Plaintiffs reserve the right to amend this Count to include further fraudulent and racketeering activity that they discover in the course of this lawsuit because the RICO Defendants have gone to great lengths to conceal such activity.

**Closed-Ended Continuity**

101.     Each Defendant committed a series of related predicate acts, i.e., the wire fraud and mail fraud, from about 2021 to present.  Thus, continuity may be shown under the closed-ended concept of continuity.

**Threat of Continuity (Open-Ended Continuity), in the Alternative**

102.     Alternatively, the acts of attempting to dupe new wholesale buyers and continuing to commit numerous acts of wire fraud to accomplish defrauding Plaintiffs through stealing profits from unlicensed use of Plaintiffs' trademark, includes a threat of continuity where the RICO Defendants have implemented an intentional scheme to defraud Plaintiffs, and—when the money runs out—others.

103.     The ongoing attempts to defraud unsuspecting wholesale buyers and the continued scheme to profit through unlicensed use of Plaintiffs' trademark through wire fraud creates the specific threat that the RICO Defendants will repeat their fraud, which damages Plaintiffs and others.

104.     Alternatively, using wire email transmissions to fraudulently cause harm to Plaintiffs and others is the regular way of conducting the RICO Defendants' ongoing business through BP Watches, AVTX, MKD, and any new entity (not yet discovered), and the vehicles

wherein the Individual RICO Defendants engaged in similar endeavors in the past and continue to do so today.

105.    The "regular way" of conducting the Defendants' businesses is through fraud: the RICO Defendants make false claims and representations as well as omissions of material information in order to defraud Plaintiffs and others.

106.    Examples of these emails, text messages, other electronic text or video communications, and phone calls used to perpetrate the fraud are alleged herein.

107.    Additionally, the RICO Defendants continue to engage in these predicate acts that harm Plaintiffs and others on a daily basis.

108.    The pattern of racketeering activity as set forth herein is established by the threat of continued activity as the RICO Defendants have directed associates throughout 2021 through the present to repeatedly engage in the same illegal and illicit activities described herein.

109.    Plaintiffs have specific knowledge of other parties who have been similarly defrauded by Individual RICO Defendants through wire fraud and mail fraud.

110.    The RICO Defendants are involved in all the above-stated schemes, with similar methods of commission, to wit: deceiving and defrauding unsuspecting wholesalers into purchasing inferior and counterfeit SpaceMax products from Defendants, permanently withholding payment from Plaintiffs for Defendants' use of Plaintiffs' SpaceMax trademark, negotiating and communicating directly with Plaintiffs' distributors in defiance of the agreement that Plaintiffs are the exclusive U.S. source of SpaceMax products, depriving Plaintiffs of the benefit of Plaintiffs' SpaceMax trademark.

111.    The RICO Defendants' violations of 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiffs, and Plaintiffs are entitled to bring this action

for **_three times their actual damages_**, as well as injunctive relief, equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**The Injury**

112.   RICO Defendants and Defendants BP Watches, AVTX, and MKD profited directly or indirectly from the Enterprise; and Plaintiffs, proximately and directly, suffered substantial damages in the form of Plaintiffs' lost income from the RICO Defendants' unlicensed and counterfeit use of Plaintiffs' SpaceMax trademark; Plaintiffs' needing to spend additional time, money, and other resources to find new manufacturers for the SpaceMax products and create contracts and business relationships, including negotiating pricing, with new manufacturers; needing to spend additional time, money, and other resources to create new distributor contracts and business relationships, including negotiating pricing; the loss of the time, money, and other resources that Plaintiffs spent to create the distribution contracts and business relationships, including negotiating pricing with these lost distributors; and loss of income from the distributors' purchasing from Defendants instead of Plaintiffs, which are ongoing and accruing through present day.

**WHEREFORE**, Plaintiffs, ADNAN VIRANI, JUNAID HAMMED, WORLD OF SPACE LLC, and WORLD OF LOTUS LLC, demand judgment as to this Count against the RICO Defendants, PRIYANK BAFNA, KAIF HAMID A/K/A KEVIN HAMID, ALTAF CHANDANI, and KETAN PATEL, for preliminary and permanent injunction to enjoin the Defendants from further engaging in racketeering activities and to prevent any further harm or loss to the Plaintiff and others, compensatory damages and treble damages, pre-judgment and post-judgment interest, attorneys' fees and costs incurred in bringing this action, and for such other relief as this Court deems just and proper.

### COUNT II - CIVIL RICO CONSPIRACY PURSUANT TO 18 U.S.C. § 1962 –
### CONSPIRACY TO COMMIT PROHIBITED ACTIVITIES
*Against Priyank Bafna, Kaif Hamid A/K/A Kevin Hamid, Altaf Chandani, and Ketan Patel*

113.     Plaintiffs reallege paragraphs 1 through 53 as though fully restated herein.

**The Conspiracy**

114.     Commencing in or about 2021 and continuing until the present time, Defendants PRIYANK BAFNA, KAIF HAMID A/K/A KEVIN HAMID, ALTAF CHANDANI, and KETAN PATEL (hereinafter "RICO Conspiracy Defendants"), conspired to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d).

115.     Each Defendant agreed that a conspirator would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, consisting of the predicate activity as more fully described in Count I [Civil Violation of RICO]. Plaintiffs allege that the conspiratorial objective of that mutual agreement was intended to deprive Plaintiffs of their property and interest in trademark and business relationships, and that such conspiratorial conduct violates 18 U.S.C. § 1962(d), i.e., to conspire or endeavor to violate any of the provisions of 18 U.S.C. § 1962(c).

116.     Each RICO Conspiracy Defendant intended to further the schemes to defraud, which, as described in Count I [Civil Violation of RICO], were completed and satisfied by at least one substantive individual Defendant.

117.     As demonstrated in detail above in Count I [Civil Violation of RICO], the RICO Conspiracy Defendants have engaged in numerous predicate racketeering acts in furtherance of the conspiracy, including wire fraud and mail fraud, all designed to defraud Plaintiffs and other victims of money and other property interests and to conceal the nature, source, and location of such proceeds.

118.     The nature of the above-described acts, material misrepresentations, and omissions in furtherance of the conspiracy give rise to an inference that each RICO Conspiracy Defendant *not only agreed* to the objective of conspiring to violate 18 U.S.C. § 1962(c), *but also was aware* that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

119.     The agreement to violate RICO with regard to each conspiracy defendant is as follows:

120.     Defendants Kaif and Altaf are the owners of AVTX, followed the direction of Defendant Priyank, and conspired with Defendant Priyank to engage in multiple racketeering acts of mail fraud and wire fraud, described above, which Plaintiffs realleged and averred in this Count. As a result, Defendants Kaif and Altaf intended to further the substantive violations of fraud, which were completed, and they adopted the goal of furthering or facilitating the criminal endeavor. Accordingly, Defendants Kaif and Altaf conspired to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d).

121.     Defendant Ketan is the owner of MKD, followed the direction of Defendant Priyank, and conspired with Defendant Priyank to engage in multiple racketeering acts of mail fraud and wire fraud described above, which Plaintiffs realleged and averred in this Count. As a result, Defendant Ketan intended to further the substantive violations of fraud, which were completed, and he adopted the goal of furthering or facilitating the criminal endeavor. Accordingly, Defendant Ketan conspired to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d).

122.     Defendant Priyank is the owner of BP Watches, followed the direction of Defendants Kaif and Altaf, and conspired with Defendants Kaif and Altaf to engage in multiple

racketeering acts of mail fraud and wire fraud described above, which Plaintiffs realleged and averred in this Count. As a result, Defendant Priyank intended to further the substantive violations of fraud, which were completed, and he adopted the goal of furthering or facilitating the criminal endeavor. Accordingly, Defendant Priyank conspired to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d).

123.    Defendant Ketan is the owner of MKD, followed the direction of Defendants Kaif and Altaf, and conspired with Defendants Kaif and Altaf to engage in multiple racketeering acts of mail fraud and wire fraud described above, which Plaintiffs realleged and averred in this Count. As a result, Defendant Ketan intended to further the substantive violations of fraud, which were completed, and he adopted the goal of furthering or facilitating the criminal endeavor. Accordingly, Defendant Ketan conspired to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d).

124.    Defendant Priyank is the owner of BP Watches, followed the direction of Defendant Ketan, and conspired with Defendant Ketan to engage in multiple racketeering acts of mail fraud and wire fraud described above, which Plaintiffs realleged and averred in this Count. As a result, Defendant Priyank intended to further the substantive violations of fraud, which were completed, and he adopted the goal of furthering or facilitating the criminal endeavor. Accordingly, Defendant Priyank conspired to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d).

125.    Defendants Kaif and Altaf are the owners of AVTX, followed the direction of Defendant Ketan, and conspired with Defendant Ketan to engage in multiple racketeering acts of mail fraud and wire fraud described above, which Plaintiffs realleged and averred in this Count. As a result, Defendants Kaif and Altaf intended to further the substantive violations of fraud, which were completed, and they adopted the goal of furthering or facilitating the criminal endeavor.

Accordingly, Defendants Kaif and Altaf conspired to violate 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d).

**The Injury**

126.     As a direct and proximate result of the RICO Conspiracy Defendants' agreement that conspirators would violate 18 U.S.C. § 1962(c), Plaintiffs, and other victims described in Count I [Civil Violation of RICO], have been and are continuing, directly and proximately, to be injured as set forth more fully above.

**WHEREFORE,** Plaintiffs, ADNAN VIRANI, JUNAID HAMMED, WORLD OF SPACE LLC, and WORLD OF LOTUS LLC, demand judgment as to this Count against the RICO Conspiracy Defendants PRIYANK BAFNA, KAIF HAMID A/K/A KEVIN HAMID, ALTAF CHANDANI, and KETAN PATEL, for preliminary and permanent injunction to enjoin the Defendants from further engaging in racketeering activities and to prevent any further harm or loss to the Plaintiff and others, compensatory damages together with interest, attorneys' fees, and costs for instituting and prosecuting the instant action and for such further relief as this Court deems just and proper.

## COUNT III - TRADEMARK INFRINGEMENT
### *By Plaintiff World of Space LLC Against BP Watches and Electronics Co Ltd; LNSK Associates, Inc., D/B/A AVTX Wholesale; and MK Distributors, Inc.*

127.     Plaintiff World of Space LLC realleges paragraphs 1 through 53 as though fully restated herein.

128.     Plaintiff WORLD OF SPACE LLC brings this cause of action against Defendants, BP WATCHES AND ELECTRONICS CO LTD; LNSK ASSOCIATES, INC., D/B/A AVTX WHOLESALE; and MK DISTRIBUTORS, INC., for trademark infringement under 15 U.S.C. §

1125, where Defendants used Plaintiffs' SpaceMax mark in commerce and caused both a likelihood of confusion and actual confusion.

129.    Plaintiff World of Space is the owner of the SpaceMax mark and is the entity exclusively authorized by ELUX to use SpaceMax as a trademark in the United States. *See* Affidavit at **Exhibit A**.

130.    Plaintiff World of Space filed its application for trademark protection on February 4, 2022. *See* Trademark Application **Exhibit B**.

131.    Plaintiff World of Space additionally created custom packaging for use in the United States market, and this packaging differs from that used in Europe or other markets.

132.    Plaintiff World of Space's SpaceMax mark and usage is senior to Defendants' usage of the infringing name, packaging, and product.

133.    Defendants BP Watches and AVTX's infringing product has the identical name, overwhelmingly similar packaging, identical function, and similar but lesser price for a nearly identical—although inferior quality—product as the ones produced by Plaintiff World of Space. *See* Trademark Application at **Exhibit B**, Trademark Opposition at **Exhibit C**.

134.    Defendants BP Watches and AVTX intend for the infringing product to compete directly with the genuine SpaceMax product, as demonstrated by Defendants BP Watches and AVTX's selling their counterfeit product to the same distributors that Plaintiff sold to.

135.    Defendants BP Watches and AVTX use their counterfeit products with the SpaceMax mark in commercial advertising, promotion, goods, and commercial activities, across multiple states and marketing channels, for interstate distribution.

136.    At no point did Defendants BP Watches and AVTX use the SpaceMax mark *without* confusion for Plaintiff's SpaceMax product.

137.    Defendants BP Watches and AVTX knew or should have known that Plaintiff World of Space claimed trademark usage of the "SpaceMax" brand in early 2022, because the SpaceMax logo including a "TM" indicator appears on invoices from World of Space sent to AVTX. *See* sales invoices attached and incorporated as **Exhibit G**.

138.    Despite seeing the SpaceMax logo and "TM" indicator in early 2022, Defendant AVTX waited ***well over a year*** to investigate any trademark issues or seek to oppose Plaintiff World of Space's trademark application filed February 4, 2022.

139.    Additionally, Defendant AVTX delayed until June 30, 2023, to file its Notice of Opposition to Plaintiff World of Space's trademark application. *See* Trademark Opposition at **Exhibit C**.

140.    Defendants BP Watches and AVTX misrepresent the nature, characteristics, and quality of their counterfeit version of SpaceMax products to be the same as Plaintiff World of Space's genuine SpaceMax products.

141.    Defendants BP Watches and AVTX's infringing use of the SpaceMax brand is not descriptive, functional, fair use, or subject to any other defense.

142.    Defendants BP Watches and AVTX's unauthorized and unlicensed use of Plaintiff's SpaceMax mark is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of the counterfeit SpaceMax products, such that the person viewing the counterfeit SpaceMax products is likely to mistakenly believe that the counterfeit products are official, genuine SpaceMax products produced by Plaintiff.

143.    Indeed, distributors contacted Plaintiff to ask why the SpaceMax products from AVTX cost less than the SpaceMax products from Plaintiff, which demonstrates that the distributors have experienced ***actual confusion, mistake, and deception*** as to the affiliation,

connection, or association of the counterfeit SpaceMax products, such that the distributors in receipt of the counterfeit SpaceMax products actually mistakenly believed that the counterfeit products are official, genuine SpaceMax products produced by Plaintiff.

144.     Defendant MKD, by selling the counterfeit SpaceMax products, furthers the trademark infringement committed by Defendants BP Watches and AVTX, and Defendant MKD knew or should have known that the SpaceMax products from BP Watches and AVTX are unauthorized, unlicensed, and counterfeit.

145.     Defendants BP Watches, AVTX, and MKD's infringement upon Plaintiff World of Space's SpaceMax trademark caused Plaintiff to incur damages in the form of Plaintiff's lost income from the distributors' purchasing counterfeit SpaceMax products from Defendants BP Watches, AVTX, and MKD instead of Plaintiffs; lost income from retailers' purchasing counterfeit SpaceMax products from unauthorized distributors; lost market share to the counterfeit SpaceMax products; lost use of the SpaceMax trademark, brand, product specification, and package design; diminished value of the intellectual property of the SpaceMax trademark and brand; and lost benefit of their intellectual property rights in the SpaceMax trademark and brand.

146.     Plaintiff reserves the right to amend its pleadings to assert a claim for punitive damages due to the Defendants' intentional, malicious, and deceitful conduct alleged herein.

**WHEREFORE,** Plaintiff, WORLD OF SPACE LLC, demands entry of judgment as to this Count against Defendants BP WATCHES AND ELECTRONICS CO LTD; LNSK ASSOCIATES, INC., D/B/A AVTX WHOLESALE; and MK DISTRIBUTORS, INC., for preliminary and permanent injunction to enjoin the Defendants from further engaging in racketeering activities and to prevent any further harm or loss to the Plaintiff and others, compensatory damages, together with pre-judgment and post-judgment interest, attorneys' fees

and costs incurred in bringing this action; ordering the forfeiture of infringing products in Defendants' possession, enjoining Defendants from further infringement, and for such other and further relief as this Court deems just and proper.

### COUNT IV - TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS ADVANTAGE
***Against Priyank Bafna, Kaif Hamid A/K/A Kevin Hamid, and Altaf Chandani***

147.    Plaintiffs reallege paragraphs 1 through 53 as though fully restated herein.

148.    Beginning in approximately 2021, Plaintiffs began contractual relationships with distributors to sell Plaintiffs' SpaceMax products to the distributors, with the distributors' serving as the sole source for retailers to purchase Plaintiffs licensed, branded SpaceMax products in the United States.

149.    These distributors included AVTX (owned by Kaif and Altaf), MKD (owned by Ketan) and others.

150.    Plaintiffs had pre-existing contractual relationships with the individual distributors who resold Plaintiffs' SpaceMax products.

151.    Plaintiffs invested substantial time, money, and other resources in creating these distribution contracts and business relationships, including negotiating pricing.

152.    Defendants Priyank, Kaif, and Altaf, acting in their individual capacity, had knowledge of the contractual relationship between Plaintiffs and the distributors.

153.    Defendants Priyank, Kaif, and Altaf maliciously and intentionally interfered with Plaintiffs' continued contractual relationships with its distributors by secretly, independently contacting distributors to sell counterfeit SpaceMax products to the distributors directly, thus bypassing Plaintiffs altogether, while claiming that AVTX was the sole source of SpaceMax products in the United States, when these Defendants knew or should have known that Defendant

BP Watches (owned by Priyank) had previously agreed (1) to sell the SpaceMax products *only* to Plaintiffs, and (2) that Plaintiffs would serve as the sole source of SpaceMax products in the United States.

154.     Defendants Priyank, Kaif, and Altaf caused the distributors to terminate their relationship with Plaintiffs for these Defendants' own personal financial advantage and did indeed reap a personal financial windfall from their malicious conduct.

155.     Defendants Priyank, Kaif, and Altaf's conduct was without justification or privilege.

156.     Defendants Priyank, Kaif, and Altaf caused Plaintiffs to incur damages in the form of Plaintiffs' needing to spend additional time, money, and other resources to find new manufacturers for SpaceMax products and create contracts and business relationships, including negotiating pricing; needing to spend additional time, money, and other resources to create new distributor contracts and business relationships, including negotiating pricing; the loss of the time, money, and other resources that Plaintiffs spent to create the distribution contracts and business relationships, including negotiating pricing with these lost distributors; loss of income from the distributors' purchasing counterfeit SpaceMax products from Defendant BP Watches instead of Plaintiffs; and loss of income from retailers' purchasing counterfeit SpaceMax products from unauthorized distributors.

157.     Plaintiffs reserve the right to amend their pleadings to assert a claim for punitive damages due to the Defendants' intentional, malicious, and deceitful conduct alleged herein.

**WHEREFORE,** Plaintiffs, ADNAN VIRANI, JUNAID HAMMED, WORLD OF SPACE LLC, and WORLD OF LOTUS LLC, demand entry of judgment as to this Count against Defendants PRIYANK BAFNA, KAIF HAMID A/K/A KEVIN HAMID, and ALTAF

CHANDANI for preliminary and permanent injunction to enjoin the Defendants from further interfering in Plaintiffs' contractual relationships and to prevent any further harm or loss to the Plaintiff and others, compensatory damages, together with pre-judgment and post-judgment interest, attorneys' fees and costs incurred in bringing this action, and for such other and further relief as this Court deems just and proper.

## COUNT V - FRAUD IN THE INDUCEMENT / FRAUDULENT MISREPRESENTATION
### *Against All Defendants*

158.     Plaintiffs reallege paragraphs 1 through 53 as though fully restated herein.

159.     Defendants PRIYANK BAFNA; BP WATCHES AND ELECTRONICS CO LTD; KAIF HAMID A/K/A KEVIN HAMID; ALTAF CHANDANI; LNSK ASSOCIATES, INC., D/B/A AVTX WHOLESALE; KETAN PATEL; AND MK DISTRIBUTORS, INC. ("Fraudulent Misrepresentation Defendants") willfully and intentionally made material misrepresentations, false statements, omissions, and concealments to Plaintiffs before, during and after Plaintiffs' contracting with Defendants.

160.     Defendants Priyank and BP Watches willfully and intentionally misrepresented to Plaintiffs that Defendant BP Watches sold the manufactured SpaceMax products *only* to Plaintiffs, that Plaintiffs were the *sole* source of SpaceMax products in the United States, and that Plaintiffs owned the SpaceMax brand and trademark in the Unites States, when, in reality, Defendant BP Watches sold counterfeit SpaceMax products directly to distributors including AVTX (owned by Kaif and Altaf) and MKD (owned by Ketan), cutting out Plaintiffs, and illegally appropriating Plaintiffs' SpaceMax products.

161.     The Fraudulent Misrepresentation Defendants knew that they made these false statements, misrepresentations, and concealments to Plaintiffs, with the intent (1) to defraud

Plaintiffs out of Plaintiffs' own property, i.e., the SpaceMax brand; (2) to defraud Plaintiffs out of money that Plaintiffs would make from selling Plaintiffs' own products; and (3) to prevent Plaintiffs from receiving the SpaceMax products that Defendants manufactured exclusively for Plaintiffs.

162.    The Fraudulent Misrepresentation Defendants intended for Plaintiffs to act on their false statements, misrepresentations, and concealments.

163.    Plaintiffs reasonably and justifiably relied on the Fraudulent Misrepresentation Defendants' fraudulent misrepresentations to their detriment because Plaintiffs had no way to know Defendants' intentions or actions at the time that Defendants made the fraudulent misrepresentation.

164.    The Fraudulent Misrepresentation Defendants' unconscionable acts are fraudulent, deceitful, and committed intentionally to significantly damage Plaintiffs.

165.    The Fraudulent Misrepresentation Defendants' fraudulent and deceitful conduct caused Plaintiffs to suffer damages in the form of Plaintiffs' needing to spend additional time, money, and other resources to find new manufacturers for SpaceMax products and create contracts and business relationships, including negotiating pricing; needing to spend additional time, money, and other resources to create new distributor contracts and business relationships, including negotiating pricing; the loss of the time, money, and other resources that Plaintiffs spent to create the distribution contracts and business relationships, including negotiating pricing with these lost distributors; loss of income from the distributors' purchasing counterfeit SpaceMax products from Defendant BP Watches instead of Plaintiffs; and loss of income from retailers' purchasing counterfeit SpaceMax products from unauthorized distributors.

166.    The Fraudulent Misrepresentation Defendants and their representatives' conduct caused Plaintiffs' inability to discover Defendants' fraudulent concealment at the time it occurred.

167.    Plaintiffs reserve the right to amend their pleadings to assert a claim for punitive damages due to Fraudulent Misrepresentation Defendants' intentional, malicious, and deceitful conduct alleged herein.

**WHEREFORE**, Plaintiffs, ADNAN VIRANI, JUNAID HAMMED, WORLD OF SPACE LLC, and WORLD OF LOTUS LLC, demand judgment as to this Count against Defendants, PRIYANK BAFNA;  BP WATCHES AND ELECTRONICS CO LTD; KAIF HAMID A/K/A KEVIN HAMID; ALTAF CHANDANI; LNSK ASSOCIATES, INC., D/B/A AVTX WHOLESALE; KETAN PATEL; and MK DISTRIBUTORS, INC., for preliminary and permanent injunction to enjoin the Defendants from further engaging in fraud and to prevent any further harm or loss to the Plaintiff and others, compensatory damages, together with pre-judgment and post-judgment interest, attorneys' fees and costs incurred in bringing this action, and for such other relief as this Court deems just and proper.

### COUNT VI - FRAUDULENT CONCEALMENT
*Against All Defendants*

168.    Plaintiffs reallege paragraphs 1 through 53 as though fully restated herein.

169.    Defendants PRIYANK BAFNA; BP WATCHES; KAIF HAMID A/K/A KEVIN HAMID; ALTAF CHANDANI; LNSK ASSOCIATES, INC., D/B/A AVTX WHOLESALE; KETAN PATEL; AND MK DISTRIBUTORS, INC. ("Fraudulent Concealment Defendants"), and their representatives purposely and intentionally concealed or failed to disclose material facts to Plaintiffs as alleged herein.

170.     The Fraudulent Concealment Defendants never provided Plaintiffs with, and instead concealed from them, the facts about Defendant BP Watches' manufacturing then selling counterfeit SpaceMax products directly to distributors including AVTX (owned by Kaif and Altaf) and MKD (owned by Ketan), instead of manufacturing the genuine SpaceMax products for sale exclusively to Plaintiffs.

171.     The Fraudulent Concealment Defendants purposely and intentionally omitted Plaintiffs from communications regarding Defendants' business practices where Defendant BP Watches would manufacture then sell counterfeit SpaceMax products directly to distributors including AVTX and MKD, and where AVTX would sell these same counterfeit SpaceMax products to other distributors.

172.     Defendants Priyank, Kaif, Altaf, and Ketan purposely and intentionally concealed and refused to provide to Plaintiffs with correct and accurate information regarding Defendant BP Watches' manufacturing and selling counterfeit SpaceMax products, even upon Plaintiffs' repeated requests to the Fraudulent Concealment Defendants for correct and accurate information regarding same.

173.     The Fraudulent Concealment Defendants, and their representatives, knew that the facts surrounding their illegal use of Plaintiffs' SpaceMax brand and their unauthorized sales of counterfeit SpaceMax products were material facts that the Fraudulent Concealment Defendants should have disclosed to Plaintiffs: that Defendant BP Watches was manufacturing then selling counterfeit SpaceMax products directly to distributors including AVTX and MKD and bypassing Plaintiffs altogether, instead of manufacturing the SpaceMax products for sale only to Plaintiffs,.

174.     The Fraudulent Concealment Defendants, and their representatives, knew that their failure to disclose that Defendant BP Watches was manufacturing then selling counterfeit

SpaceMax products directly to distributors and bypassing Plaintiffs altogether instead of manufacturing for sale only to Plaintiffs, were material facts that the Fraudulent Concealment Defendants should have disclosed to Plaintiffs.

175.   The Fraudulent Concealment Defendants, and their representatives, knew or should have known that their concealment of the above referenced material facts would prevent Plaintiffs from (1) discovering that Defendants were illegally using Plaintiffs' trademark, and (2) having full information for making business decisions, namely whether to continue utilizing Defendant BP Watches for manufacturing Plaintiffs' SpaceMax products.

176.   The Fraudulent Concealment Defendants, and their representatives, had a duty to disclose these material facts to Plaintiffs.

177.   Plaintiffs relied on the Fraudulent Concealment Defendants and their representatives to Plaintiffs' detriment, and the Fraudulent Concealment Defendants' conduct caused Plaintiffs to suffer damages in the form of Plaintiffs' needing to spend additional time, money, and other resources to find new manufacturers for SpaceMax products and create contracts and business relationships, including negotiating pricing; needing to spend additional time, money, and other resources to create new distributor contracts and business relationships, including negotiating pricing; the loss of the time, money, and other resources that Plaintiffs spent to create the distribution contracts and business relationships, including negotiating pricing with these lost distributors; loss of income from the distributors' purchasing counterfeit SpaceMax products from Defendant BP Watches instead of Plaintiffs; and loss of income from retailers' purchasing counterfeit SpaceMax products from unauthorized distributors.

178.   The Fraudulent Concealment Defendants and their representatives' conduct caused Plaintiffs' inability to discover Defendants' fraudulent concealment at the time it occurred.

179.    Plaintiffs reserve the right to amend their pleadings to assert a claim for punitive damages due to the Fraudulent Concealment Defendants' intentional, malicious, and deceitful conduct alleged herein.

**WHEREFORE**, Plaintiffs, ADNAN VIRANI, JUNAID HAMMED, WORLD OF SPACE LLC, and WORLD OF LOTUS LLC, demand judgment as to this Count against Defendants, PRIYANK BAFNA;  BP WATCHES AND ELECTRONICS CO LTD; KAIF HAMID A/K/A KEVIN HAMID; LNSK ASSOCIATES, INC., D/B/A AVTX WHOLESALE; KETAN PATEL; and MK DISTRIBUTORS, INC., for preliminary and permanent injunction to enjoin the Defendants from further engaging in fraud and to prevent any further harm or loss to the Plaintiff and others, compensatory damages, together with pre-judgment and post-judgment interest, attorneys' fees and costs incurred in bringing this action, and for such other relief as this Court deems just and proper.

## COUNT VII - CIVIL CONSPIRACY
### *Against Priyank Bafna, Kaif Hamid A/K/A Kevin Hamid, Altaf Chandani, and Ketan Patel*

180.    Plaintiffs reallege paragraphs 1 through 53 as though fully restated herein.

181.    Defendants PRIYANK BAFNA, KAIF HAMID A/K/A KEVIN HAMID, ALTAF CHANDANI, and KETAN PATEL (hereinafter "Civil Conspiracy Defendants") conspired with one another, as well as other individuals and entities, to perpetrate an unlawful act upon Plaintiffs or to perpetrate a lawful act by unlawful means, to wit: to defraud Plaintiffs, to deprive Plaintiffs of income consistent with Plaintiffs' exclusive ownership and right to use the SpaceMax trademark, and to deprive Plaintiffs of their intellectual property of the SpaceMax trademark and brand.

182.     The Civil Conspiracy Defendants routinely concealed that they sold counterfeit SpaceMax product to distributors in the United States in contravention of an agreement that Defendant BP Watches (owned and controlled by Priyank) was to manufacture the SpaceMax products *exclusively* for Plaintiffs, that Plaintiffs were the *sole* source of SpaceMax products in the United States, and that Plaintiffs owned the SpaceMax brand and trademark in the United States.

183.     The Civil Conspiracy Defendants concealed their activities to avoid detection of their scheme to defraud Plaintiffs.

184.     The Civil Conspiracy Defendants purposely and intentionally omitted Plaintiffs from all communications regarding Defendants' business practices where Defendant BP Watches would manufacture then sell counterfeit SpaceMax products directly to distributors including AVTX (owned and controlled by Kaif and Altaf) and MKD (owned and controlled by Ketan), and where AVTX would sell these same counterfeit SpaceMax products to other distributors.

185.     The participants in the conspiracy, including the Civil Conspiracy Defendants, put their own pecuniary interests ahead of the welfare and economic safety of Plaintiffs, who are the victims of the conspiracy.

186.     The Civil Conspiracy Defendants had actual or constructive knowledge of the scheme to illegally use Plaintiffs' SpaceMax brand for counterfeit SpaceMax products, and Defendants were aware that they were playing vital roles in the planning, success, maintenance, and expansion of the scam against Plaintiffs.

187.     As a direct and proximate result of the Civil Conspiracy Defendants' participation in, and furtherance of, the conspiracy, Plaintiffs have suffered damages.

188.    Plaintiffs reserve the right to amend their pleadings to assert a claim for punitive damages due to the Civil Conspiracy Defendants' intentional, malicious, and deceitful conduct alleged herein.

**WHEREFORE**, Plaintiffs, ADNAN VIRANI, JUNAID HAMMED, WORLD OF SPACE LLC, and WORLD OF LOTUS LLC, demand judgment as to this Count against Defendants, PRIYANK BAFNA, KAIF HAMID A/K/A KEVIN HAMID, ALTAF CHANDANI, and KETAN PATEL, for preliminary and permanent injunction to enjoin the Defendants from further acts of conspiracy and to prevent any further harm or loss to the Plaintiff and others, compensatory damages, together with pre-judgment and post-judgment interest, attorneys' fees and costs incurred in bringing this action, and for such other relief as this Court deems just and proper.

### COUNT VIII - UNJUST ENRICHMENT
*Against All Defendants*

189.    Plaintiffs reallege paragraphs 1 through 53 as though fully restated herein.

190.    Plaintiffs bring this cause of action for unjust enrichment against Defendants, PRIYANK BAFNA; BP WATCHES AND ELECTRONICS CO LTD; KAIF HAMID A/K/A KEVIN HAMID; LNSK ASSOCIATES, INC., D/B/A AVTX WHOLESALE; KETAN PATEL; and MK DISTRIBUTORS, INC., for their voluntary retention of an inequitable benefit from Plaintiffs' SpaceMax trademark and the Defendants' failure to remit payment to Plaintiffs of a value that matches the amount due to Plaintiffs for such use.

191.    Plaintiffs conferred a benefit upon Defendants in the form of sharing Plaintiffs' product specification information and packaging design with Defendants for the ***sole purpose*** of Defendant BP Watches' manufacturing Plaintiffs' SpaceMax products.

192.     Following Plaintiffs' sharing the SpaceMax product specifications and packaging design with Defendant BP Watches *solely* so that BP Watches could manufacture the SpaceMax products, Defendants have made substantial profits from Defendants' unauthorized and unlicensed sale of counterfeit SpaceMax products.

193.     Defendant BP Watches accepted and retained the benefit of Plaintiffs' specification information and packaging design for SpaceMax products without fully compensating Plaintiffs for such benefit.

194.     Specifically, Defendant BP Watches retained and continues to retain the benefit of Plaintiffs' sharing SpaceMax product specification information and packaging design by retaining the income that Defendants make from unauthorized, unlicensed, counterfeit SpaceMax products, by failing to pay Plaintiffs for Defendants' unauthorized and unlicensed use of Plaintiffs' intellectual property of the SpaceMax trademark including product specification and packaging design, by holding out the SpaceMax brand as Defendants' own, and by trading on Plaintiffs' good name.

195.     Under these circumstances, it is inequitable for Defendants to retain the benefit without compensating Plaintiffs for same.

196.     Under the circumstances, Plaintiffs lack an adequate remedy at law and are entitled to a judgment for compensatory damages.

**WHEREFORE**, Plaintiffs, ADNAN VIRANI, JUNAID HAMMED, WORLD OF SPACE LLC, and WORLD OF LOTUS LLC, demand judgment as to this Count against Defendants, PRIYANK BAFNA; BP WATCHES AND ELECTRONICS CO LTD; KAIF HAMID A/K/A KEVIN HAMID; LNSK ASSOCIATES, INC., D/B/A AVTX WHOLESALE; KETAN PATEL; and MK DISTRIBUTORS, INC., for preliminary and permanent injunction to

enjoin the Defendants from further engaging in activities to enrich Defendants to the detriment of Plaintiffs, and to prevent any further harm or loss to the Plaintiff and others, compensatory damages, together with pre-judgment and post-judgment interest, attorneys' fees and costs incurred in bringing this action, and for such other relief as this Court deems just and proper.

### COUNT IX - CONVERSION
### *Against All Defendants*

197.    Plaintiffs reallege paragraphs 1 through 53 as though fully restated herein.

198.    Plaintiffs bring this cause of action against Defendants, PRIYANK BAFNA; BP WATCHES AND ELECTRONICS CO LTD; KAIF HAMID A/K/A KEVIN HAMID; LNSK ASSOCIATES, INC., D/B/A AVTX WHOLESALE; KETAN PATEL; and MK DISTRIBUTORS, INC. (hereinafter "Conversion Defendants"), for conversion where Defendants exercised wrongful dominion or control over Plaintiffs' intellectual property of the SpaceMax trademark, to the detriment of and inconsistent with the rights of actual owner Plaintiffs.

199.    The Conversion Defendants knowingly and intentionally asserted wrongful dominion or control over the SpaceMax trademark by manufacturing, passing off as their own, and selling SpaceMax trademarked products directly to distributors in the United States, and fully bypassing Plaintiffs.

200.    Plaintiffs are the rightful and actual owners of the SpaceMax trademark, which is Plaintiffs' property.

201.    The Conversion Defendants' continued wrongful usage of Plaintiffs' SpaceMax trademark indefinitely or permanently deprives Plaintiffs (1) of their property rights in the trademark as to those products sold, and (2) of the benefit of the ownership of their property of the

SpaceMax trademark specifically the money that Defendants made from unauthorized and unlicensed use of Plaintiffs' SpaceMax brand.

202.    The Conversion Defendants' depriving Plaintiffs of Plaintiffs' exclusive use of their own SpaceMax trademarked brand is inconsistent with and detrimental to Plaintiff's ownership interest in the SpaceMax trademark.

203.    Plaintiffs repeatedly demanded that the Conversion Defendants stop selling SpaceMax products to U.S. distributors and remit payment for Defendants' unauthorized and unlicensed use of Plaintiffs' SpaceMax trademark.

204.    The Conversion Defendants are not entitled to use Plaintiffs' SpaceMax trademark or retain the profits from unauthorized and unlicensed use of Plaintiffs' SpaceMax trademark, yet they refuse to stop selling SpaceMax products to U.S. distributors and remit payment for Defendants' unauthorized and unlicensed use of Plaintiffs' SpaceMax trademark.

205.    Plaintiffs did not consent to the Conversion Defendants' conduct in the intentional, substantial, unjustified interference and exercise of dominion over Plaintiffs' SpaceMax trademark and the proceeds of sales from SpaceMax products in the United States.

206.    Plaintiffs are entitled to the immediate discontinuation of the Conversion Defendants' sales of SpaceMax products directly to distributors.

207.    Plaintiffs are entitled to the immediate possession of all proceeds of Defendants' sales of SpaceMax products directly to distributors and which bypass Plaintiffs.

208.    The Conversion Defendants' wrongful acts of dominion over Plaintiffs' SpaceMax trademark and the Defendants' unauthorized and unlicensed sales of SpaceMax products, have directly and proximately caused Plaintiffs to suffer damages in the form of the Plaintiffs' lost profits and damage to the SpaceMax trademark and brand.

209.    Plaintiffs reserve the right to amend their pleadings to assert a claim for punitive damages due to the Conversion Defendants' intentional, malicious, and deceitful conduct alleged herein.

**WHEREFORE**, Plaintiffs, ADNAN VIRANI, JUNAID HAMMED, WORLD OF SPACE LLC, and WORLD OF LOTUS LLC, demand judgment as to this Count against Defendants, PRIYANK BAFNA; BP WATCHES AND ELECTRONICS CO LTD; KAIF HAMID A/K/A KEVIN HAMID; LNSK ASSOCIATES, INC., D/B/A AVTX WHOLESALE; KETAN PATEL; and MK DISTRIBUTORS, INC., for preliminary and permanent injunction to enjoin the Defendants from further engaging in conversion of Plaintiffs' property and to prevent any further harm or loss to the Plaintiff and others, compensatory damages, together with pre-judgment and post-judgment interest, attorneys' fees and costs incurred in bringing this action, and for such other relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated this 6th day of November 2023.

**FARROW LAW, P.A.**
Attorneys for Plaintiff
1 Alhambra Plaza, Penthouse
Coral Gables, Florida
Telephone: (954) 252-9818
jay@farrowlawfirm.com
service@farrowlawfirm.com

BY:   **/s/Jay L. Farrow, Esq.**
       Jay L. Farrow, Esq.
       Florida Bar Number: 625213

       Tanesha W. Blye, Esq.
       Florida Bar Number: 0738158
       *Of Counsel*